## 12714. HILL v. THE STATE.

</div>

A conviction of arson was authorized by the evidence. LUKE, J., dissents.

<div align="center">

DECIDED NOVEMBER 16, 1921.

</div>

Indictment for arson; from Jackson superior court — Judge Fortson. June 30, 1921.

Threats and footprints were the main circumstances relied on to connect the accused with the burning of the house. He and his family lived on a farm adjoining the farm. on which was the burned house, a three-room dwelling occupied by Jess Harris and his family. It was testified that "these negroes [Jess Harris and the defendant, Jerry Hill] had been rowing there the whole year about one thing and another," and that the two families had "rowed the whole summer" preceding the burning, which was

in the night of September 21, 1920. Jerry Hill had been talking with the landlord of Jess Harris about trading for the place occupied by Jess, and said he "could not stay down there with those other negroes." He·went to the wife of Jess Harris with a pistol and threatened to kill her, and she had a peace warrant sworn out for him. Different witnesses testified to threats by him, and that he said, if he could not "get" Jess Harris in one way, he would get Jess in another, and "if he couldn't get him in daytime, he would get him at night." One witness testified: "I had a conversation with Jerry at his home the day before the fire. . . He finally mentioned the name of Jess and his wife, and looked up to me and says 'I will get even with them before it is over with.'"

The fire was discovered by the inmates of the house after midnight; it started outside the house and on opposite sides, at the ends of the bedrooms in which they were sleeping; it looked as if it was "set from the bottom;" there .had been no fire inside the house that night. There was a strong smell of kerosene on the premises, and burned matches were discovered on the ground. Jess Harris testified that he "whooped and holloaed around while the house was burning and fired. a gun, but could not get anybody to come." He finally ran to the house of Tom Pettyjohn, passing the house of Jerry Hill, who was the closest neighbor, and Tom said that he heard the shots. Tom and others who were notified came to the house, and they discovered around. it naked footprints, with certain peculiarities described, which were identified as tracks of Jerry Hill, and which the witnesses traced to his house. He was called and was asked why he was lying down when his neighbor's house was burning up. He said he did not know anything about it, and seemed to be "scared some way or other," and said, "It looks suspicious I burned the house." A witness said to him, "Yes, it does." The accused said, "You believe it?" The witness said "It looks suspicious from the way you look and the way you talk, you burned the house." Later, when questioned, he said, "You think it looks like it points to me, and I want you to know I didn't do it."

*A. C. Brown, Wolver M. Smith,* for plaintiff in error.

*W. O. Dean, solicitor-general, P. Cooley,* contra.

PER CURIAM. The motion for a new trial contains only the

usual general grounds, and the evidence, while circumstantial, was sufficient to exclude. every reasonable hypothesis save that of the defendant's guilt. It was therefore not error to overrule the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur. Luke, J., dissents.*

LUKE, J., dissenting. Though the State's evidence strongly tended to establish the fact that the tracks seen near the place of the crime corresponded in minute particulars with the tracks of the accused, who was charged with the offense of arson, the circumstantial evidence was not sufficient, in my opinion, to show, to the exclusion of every other reasonable hypothesis, that the defendant committed the crime.